

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-9-2003

# In Re: Tutu Wells

Precedential or Non-Precedential: Precedential

Docket 01-4176

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation
"In Re: Tutu Wells " (2003). *2003 Decisions*. Paper 596.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/596

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 8, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 01-4176 & 01-4204

———————

IN RE: TUTU WATER WELLS CERCLA LITIGATION

COMMISSIONER OF THE DEPT. OF PLANNING &
NATURAL RESOURCES, DEAN C. PLASKETT, in his
capacity as Trustee for Natural Resources of the Territory
of the United States Virgin Islands

v.

ESSO STANDARD OIL S.A., LTD.; ESSO VIRGIN
ISLANDS, INC.; ESSO STANDARD OIL COMPANY
(PUERTO RICO); TEXACO CARIBBEAN, INC.; TEXACO
PUERTO RICO; THE SUCCESSOR PANEX INDUSTRIES
STOCKHOLDERS' LIQUIDATING TRUST; MICHAEL D.
DeBAECKE, ESQ., IN HIS CAPACITY AS TRUSTEE OF
THE SUCCESSOR PANEX INDUSTRIES, INC.
STOCKHOLDERS LIQUIDATING TRUST; PANEX CO.;
THE ESTATE OF PAUL LAZARE
BY ITS EXECUTORS, NORMAN HALPER and
OLIVER LAZARE; ANDREAS GAL; L'HENRI, INC.
D/B/A O'HENRY CLEANERS

Andreas Gal; The Estate of Paul Lazare
by its Executors, Norman Halper and
Oliver Lazare; Panex Co.,
Appellants at No. 01-4176

The Successor Panex Industries, Inc.
Stockholders' Liquidating Trust and
Michael D. DeBaecke, Esq.,
Successor Trustee,
Appellants at No. 01-4204

---

On Appeal from the District Court of the Virgin Islands
Division of St. Croix
D.C. Civil Action Nos. 98-cv-00206 & 96-cv-00054
(Honorable Raymond L. Finch)

---

Argued: September 20, 2002

Before: SCIRICA, ALITO and McKEE, *Circuit Judges*

(Filed April 8, 2003)

ROBERT L. TOFEL, ESQUIRE
 (ARGUED)
MARK A. LOPEMAN, ESQUIRE
Tofel, Karan & Partners
780 Third Avenue
New York, New York 10017

Attorneys for Appellants,
Andreas Gal; The Estate of Paul
Lazare by its Executors, Norman
Halper and Oliver Lazare;
Panex Co.

ROBERT K. HILL, ESQUIRE
 (ARGUED)
Seitz, Van Ogtrop & Green
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, Delaware 19899

Attorney for Appellants,
The Successor Panex Industries,
Inc. Stockholders' Liquidating
Trust and Michael D. DeBaecke,
Esq., Successor Trustee

3

MICHAEL B. LAW, ESQUIRE
Office of the Attorney General
 of the Virgin Islands
Department of Justice
48B-50C Kronprindsens Gade
GERS Building, 2nd Floor
Charlotte Amalie, St. Thomas
U.S. Virgin Islands 00802

   Attorney for Appellees,
   Dean C. Plaskett, in his capacity
   as Trustee for Natural Resources
   of the Territory of the United
   States Virgin Islands; Virgin
   Islands Department of Education

JOHN K. DEMA, ESQUIRE
 (ARGUED)
Law Offices of John K. Dema
1236 Strand Street, Suite 103
Christiansted, St. Croix
U.S. Virgin Islands 00820-5008

   Attorney for Appellee,
   Dean C. Plaskett, in his capacity
   as Trustee for Natural Resources
   of the Territory of the United
   States Virgin Islands

H. MARC TEPPER, ESQUIRE
Buchanan Ingersoll
11 Penn Center, 14th Floor
1835 Market Street
Philadelphia, Pennsylvania 19103

   Attorney for Appellee,
   Virgin Islands Department of
   Education

DAVID A. BORNN, ESQUIRE
The Bornn Firm
8 Norre Gade, 2nd Floor
Charlotte Amalie, St. Thomas
U.S. Virgin Islands 00802

   Attorney for Appellee,
   Virgin Islands Housing Authority

GLEN R. STUART, ESQUIRE
 (ARGUED)
KELL M. DAMSGAARD, ESQUIRE
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, Pennsylvania 19103

   Attorneys for Appellees,
   Esso Standard Oil S.A., Ltd., Esso
   Virgin Islands, Inc., and Esso
   Standard Oil Co. (Puerto Rico)

DONALD W. STEVER, ESQUIRE
Dewey Ballantine LLP
1301 Avenue of the Americas
New York, New York 10019

   Attorney for Appellees,
   Texaco Caribbean, Inc., Texaco
   Puerto Rico, Inc. and Texaco, Inc.

NANCY D'ANNA, ESQUIRE
18-38 Estate Enighed
P.O. Box 8330
St. John
U.S. Virgin Islands 00831

   Attorney for Appellee,
   L'Henri, Inc. d/b/a O'Henry
   Cleaners

JOHN A. ZEBEDEE, ESQUIRE
Hymes & Zebedee
10 Norre Gade, 3rd Floor
P.O. Box 990
Charlotte Amalie, St. Thomas
U.S. Virgin Islands 00804

Attorney for Appellee,
Vernon Morgan

## OPINION OF THE COURT

SCIRICA, *Circuit Judge*:

This is an appeal of the approval of a consent decree under the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. §§ 9601 et seq., substantially resolving more than a decade of litigation involving contamination of the Tutu Water Wells aquifer in the United States Virgin Islands. Three non-settling parties[1] appeal the District Court's approval of the consent decree, contending that the consent decree is arbitrary and unreasonable in its damage assessments and that the District Court erred in not conducting a full evidentiary hearing prior to its decision.

## I.

This matter has been in litigation for several years. We have reviewed different aspects of this case on three separate occasions. In 1995, we dismissed claims against since-dissolved corporations. *In re Tutu Wells Contamination Litig.*, 74 F.3d 1228 (3d Cir. 1995) (table). In 1997, we reversed sanctions imposed upon defendant Esso by the District Court. *In re Tutu Wells Contamination Litig.*, 120

---

1. The non-settling parties are Andreas Gal, the Estate of Paul Lazare, and the Successor Panex Industries, Inc. Stockholders' Liquidating Trust. We will refer to these parties as the "Laga Parties," which is what the entities called themselves, taking the first two letters of their last names.

F.3d 368 (3d Cir. 1997). Finally, in 2000, we denied without discussion a petition for a writ of mandamus.

Before us now is the District Court's approval of a consent decree resolving the underlying litigation. The consent decree resolves two lawsuits arising out of the Tutu site contamination.[2] The first suit was filed by the Commissioner of the Department of Planning and Natural Resources, Dean C. Plaskett, in his capacity as Trustee for the Natural Resources of the Territory of the United States Virgin Islands, against Esso, Texaco, Gal, Lazare, and certain other parties under the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. §§ 9601 et seq., and territorial statutory and common law. In the second lawsuit, Esso and Texaco sought to recover contribution under CERCLA for remediation costs incurred under prior Environmental Protection Agency administrative orders.

In support of their joint motion to the District Court, the Settling Parties filed a two-volume appendix, including the consent decree and various EPA and other expert reports. The Trustee retained Industrial Economics to conduct a damage assessment, one of two nationally known firms that performs these assessments. *Comm'r of the DPNR v. Esso Standard Oil*, Civ. No. 1998-206, at 20 (D.V.I. filed Oct. 15, 2001). The assessment here examined two types of losses: "use related loss" represented the cost to rehabilitate the contaminated portions of the Tutu aquifer; and "non-use related loss" assessed the lost value to the public from non-use of the aquifer. Industrial Economics calculated the use related loss at $16.9 million and estimated the non-use related loss at approximately $19 million. Its work was peer-reviewed by Dr. Raymond J. Kopp, a senior fellow at Resources for the Future, and Dr. Kevin J. Boyle, a professor of environmental economics at the University of Maine.

In March 1999, all parties convened a settlement conference where the Trustee disseminated the Industrial

2. For a more detailed description of the contamination at the Tutu Wells site, see *In re Tutu Wells*, 120 F.3d at 373-78 (discussing factual and procedural history).

Economics assessment to all defendants, including the Laga Parties. In conjunction with the EPA and the United States Department of Justice, the Trustee also prepared a spreadsheet to allocate fault percentages to the various parties. Based on relevant factors, including the volume and toxicity of the parties' contamination, their financial resources, and their degree of cooperation, the Trustee allocated a 38.89% share to Esso, a 26.98% share to Texaco, and a 19.84% share to the Laga Parties.[3]

The Laga Parties elected not to participate in settlement discussions beyond the initial March 1999 meeting. In contrast, Esso and Texaco participated in settlement negotiations with the Trustee between March and September 1999. These negotiations were conducted at arm's length and in good faith. They resulted in the parties agreeing in principle to a consent decree, with Esso agreeing to pay $6.1 million and Texaco $3.195 million to settle the Trustee's claims.

On February 14, 2001, the District Court heard the Settling Parties' joint motion to enforce the consent decree and permitted all parties to submit evidence and make arguments. Both the Settling Parties and the Laga Parties presented the court with proposed findings of fact and conclusions of law. On October 15, 2001, the District Court approved the consent decree and the Laga Parties now appeal.

## II.

This appeal presents two questions. First, was the District Court's approval of the consent decree fair, reasonable, and in the public interest? Second, did the District Court err by approving the consent decree without holding a full evidentiary hearing?

## A.

In enacting CERCLA, Congress crafted a complex statutory scheme designed to ensure the cleanup of the

---

3. The remaining share of 14.29% was attributed to lesser contributors.

nation's hazardous waste sites. In *FMC Corp. v. Department of Commerce*, 29 F.3d 833, 843 (3d Cir. 1994), we noted "CERCLA's broad remedial purposes" and cited as "most important[ ]" CERCLA's "essential purpose of making those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created."

To this end, CERCLA provides the EPA with "a variety of tools for achieving the efficient and cost-effective cleanup of the nation's hazardous waste sites." *United States v. Occidental Chem. Corp.*, 200 F.3d 143, 147 (3d Cir. 1999). Notable for our purposes here is that the Act expressly provides that "[w]henever practicable and in the public interest . . . [the government] shall act to facilitate agreements . . . in order to expedite effective remedial actions and minimize litigation." 42 U.S.C. § 9622(a). Under CERCLA, the EPA and other environmental agencies like the DPNR are authorized to agree to settlements that "shall be entered in the appropriate district court as a consent decree." 42 U.S.C. § 9622(d)(1)(A).

We recently had occasion to consider judicial approvals of consent decrees in CERCLA actions. *United States v. SEPTA*, 235 F.3d 817, 822 (3d Cir. 2000). In *SEPTA*, the United States brought a CERCLA action against SEPTA, Conrail, and Amtrak, all prior owners of a contaminated rail yard. The parties resolved the dispute and sought entry of a consent decree. But another prior owner of the rail yard, American Premier, objected to the proposed settlement. The district court approved the consent decree and American Premier appealed.

On appeal, we considered the proper standard of review. As we stated:

> We approach our task mindful that, on appeal, a district court's approval of a consent decree in CERCLA litigation is encased in a double layer of swaddling. The first layer is the deference the district court owes to [the] EPA's expertise and to the law's policy of encouraging settlement; the second layer is the deference we owe to the district court's discretion. Thus, [a litigant] is faced with a heavy burden in its

> attempt to persuade us that the district court abused its discretion by approving the consent decree.

*Id.* (quoting, in part, *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990)).

Appellate review, therefore, is "encased in a double layer of swaddling." *Id.* First, there is deference to the administrative agencies' input during consent decree negotiations and the law's policy of encouraging settlement. Where the appropriate agency has reviewed the record and has made a reasonable determination of fault and damages, that determination is owed some deference. *See Cannons*, 899 F.2d at 90 ("If the figures relied upon derive in a sensible way from a plausible interpretation of the record, the court should normally defer to the agency's expertise."). Second, there is deference accorded the District Court under an abuse of discretion standard.

A court should approve a consent decree if it is fair, reasonable, and consistent with CERCLA's goals. *SEPTA*, 235 F.3d at 823. In evaluating the fairness of a consent decree, a court should assess both procedural and substantive considerations. Procedural fairness requires that settlement negotiations take place at arm's length. A court should "look to the negotiation process and attempt to gauge its candor, openness and bargaining balance." *Cannons*, 899 F.2d at 86. Substantive fairness requires that the terms of the consent decree are based on "comparative fault" and apportion liability "according to rational estimates of the harm each party has caused." *SEPTA*, 235 F.3d at 823. "As long as the measure of comparative fault on which the settlement terms are based is not arbitrary, capricious, and devoid of a rational basis, the district court should uphold it." *Id.* at 824 (quotations omitted). A consent decree only need be "based on a rational determination of comparative fault, . . . whether or not [a district court] would have employed the same method of apportionment." *Id.*

Once a district court determines procedural and substantive fairness and approves the consent decree, we review its judgment for abuse of discretion. *Occidental Chem.*, 200 F.3d at 150 n.8. Parties challenging a district

court's discretion bear a "heavy burden." We will not upset the court's judgment unless those parties demonstrate the court committed a material error of law or a "meaningful error in judgment." *Cannons*, 899 F.2d at 84; *see also United States v. BP Amoco Oil PLC*, 277 F.3d 1012, 1019 (8th Cir. 2002).

## B.

Here, the Laga Parties offered no factual or documentary support for their arguments before the District Court. They elected not to offer any expert witnesses and submitted no expert reports to challenge those submitted by the Settling Parties. While they provide express references to deposition testimony to this court on appeal, they failed to do so before the District Court.

Instead of offering direct evidence to the District Court, the Laga Parties attempted to undercut the evidence submitted by the Settling Parties. They argued the record did not contain enough information for the District Court to determine whether the settlement's value was a rational determination of comparative fault. Specifically, they questioned the accuracy of the Industrial Economics damage assessment, arguing the estimation of non-use damages was inconclusive. They also contended the process did not provide them with sufficient opportunity to contest the assessment.[4]

The Laga Parties have not met their "heavy burden" to demonstrate a "meaningful error in judgment" by the District Court. The record includes evidence that Industrial Economics is one of only two companies in the United States that conduct these types of assessments. Its report was peer-reviewed and approved by two independent experts. The Settling Parties, negotiating at arm's length,

---

4. The Laga Parties also contend the District Court should have disapproved the settlement because of a pending motion, offered by some of the Settling Parties and joined by the Laga Parties, alleging a conflict of interest by the trustee's counsel, John K. Dema. But the District Court's decision not to disapprove the settlement on these grounds was sound. The Settling Parties all consented to Dema's participation in the negotiations and the settlement was independently reviewed.

accepted the report's findings. The Laga Parties received the Industrial Economics assessment at the same time as the Settling Parties and had ample opportunity to contest the fault share attributed to them. Instead, they elected to forgo the settlement process following the March 1999 meeting.

The Laga Parties were not obligated to participate in the settlement negotiations. But as we held in *Occidental Chemical*, and reaffirmed in *SEPTA*, "non-settling defendants may bear disproportionate liability for their acts." *Occidental Chem.*, 200 F.3d at 150 n.8; *see SEPTA*, 235 F.3d at 825. "In most instances, settlement requires compromise. Thus, it makes sense for the government, when negotiating, to give a [potentially responsible party] a discount on its maximum potential liability as an incentive to settle. Indeed, the statutory scheme contemplates that those who are slow to settle ought to bear the risk of paying more . . . ." *SEPTA*, 235 F.3d at 824-25 (quoting *United States v. DiBiase*, 45 F.3d 541, 546 (1st Cir. 1995)).

Esso, Texaco, and the other Settling Parties acknowledged to the District Court that they were prepared for trial but settled to avoid the risk of an adverse jury verdict. This type of compromise is contemplated by CERCLA. Thus, even if the Laga Parties' liability is increased as a result of this consent decree, it does not render the consent decree unfair.

As the Court of Appeals for the First Circuit has observed:

> Respect for the agency's role is heightened in a situation where the cards have been dealt face up and a crew of sophisticated players, with sharply conflicting interests, sit at the table. That so many affected parties, themselves knowledgeable and represented by experienced lawyers, have hammered out an agreement at arm's length and advocate its embodiment in a judicial decree, itself deserves weight in the ensuing balance. The relevant standard, after all, is not whether the settlement is one which the court itself might have fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute.

*Cannons*, 899 F.2d at 84 (citations omitted).

Here, the District Court found the parties negotiated the settlement at arm's length. *Comm'r of the DPNR*, Civ. No. 1998-206, at 39. The talks included Commissioner Plaskett of the DPNR and the Territorial Attorney General. The District Court found "the settlement comports with the public interest favoring settlement because it provides prompt resolution of the environmental claims and accountability." *Id.* at 44.

We see no abuse of discretion.

## III.

### A.

The District Court made 170 findings of fact and 91 conclusions of law. Citing *United States v. Microsoft Corp.*, 253 F.3d 34, 101 (D.C. Cir. 2001) ("It is a cardinal principle of our system of justice that factual disputes must be heard in open court and resolved through trial-like evidentiary proceedings."), the Laga Parties challenge the District Court's failure to hold a full evidentiary hearing prior to adopting the findings and conclusions, asserting they suffered "deprivations of the rights to due process to which [they] are entitled under the U.S. Constitution."

CERCLA favors fair and efficient settlements through consent decrees. 42 U.S.C. § 9622(d)(1)(A). The District Court here provided the Laga Parties an opportunity to submit evidence and present arguments to challenge the proposed CERCLA consent decree. The Constitution does not require the court to conduct a full and formal evidentiary hearing to satisfy due process concerns. *See BP Amoco Oil*, 277 F.3d at 1017-18 ("It is within the sound discretion of the trial court to decide whether an evidentiary hearing is necessary before ruling on a proposed consent decree. . . . Due process does not always require an evidentiary hearing, even where a significant interest is at stake.").

The decision whether to hold a full-blown evidentiary hearing is committed to the sound discretion of the District

Court. Here, the settlement negotiations took place at arm's length, and produced a reasonable and fair result. The Settling Parties produced an extensive documentary record to support their joint motion. The record included exhibits, expert reports, and deposition testimony detailing the fruits of more than a decade of environmental investigation at the Tutu site. In contrast, the Laga Parties presented no competing documents, testimony, or analysis. They merely contested the Settling Parties' evidence as insufficient and replete with errors. We see no violation of the Laga Parties' due process rights.

## B.

Citing *Hartford-Empire Co. v. Shawkee Manufacturing Co.*, 147 F.2d 532 (3d Cir. 1944), and *Sims v. Greene*, 161 F.3d 87, 89 (3d Cir. 1947), the Laga Parties contend the District Court erred by adopting nearly verbatim all of the factual findings and conclusions of law submitted by the Settling Parties during the February 14, 2001 hearing.[5]

Here, the Laga Parties failed to submit deposition testimony, expert reports, or analysis to support their criticism of the Settling Parties' evidence, and were afforded ample opportunity to be heard prior to and on February 14, 2001.[6] That the District Court adopted nearly verbatim the proffered findings and conclusions is irrelevant as long as those findings and conclusions were fair, reasonable, and consistent with the public interest. We have "squarely held that a district court's findings, when adopted verbatim from

---

5. The Laga Parties contend the District Court did not properly take into account the effect of the consent decree on other pending claims in the CERCLA and territorial law actions. But the District Court's obligation under CERCLA was to ensure the consent decree is fair, reasonable, and consistent with the statute's goals. Whether the court's findings have a preclusive effect against the Laga Parties only becomes ripe for determination if and when the Settling Parties use the findings and conclusions in other contexts.

6. The District Court's letter to counsel, dated February 1, 2001, indicated the February 14 proceeding was intended for the court to "entertain argument on the motion for summary judgment and the Consent Decree."

a party's proposed findings, do not demand more stringent scrutiny on appeal." *Lansford-Coaldale Water Auth. v. Tonolli Corp.*, 4 F.3d 1209, 1215 (3d Cir. 1993); *see also Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 148 (3d Cir. 1999).

The responsibility of district courts is clear — "[a] court should approve a proposed consent decree if it is fair, reasonable, and consistent with CERCLA's goals." *SEPTA*, 235 F.3d at 823. The District Court here approved a fair, reasonable, and consistent consent decree. We find no abuse of discretion.[7]

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

A True Copy:
Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*

---

7. The Laga Parties also attack specifically a number of findings of fact as being unsupported or contradicted by record evidence, and a number of conclusions of law as being erroneous. The basis for many of these arguments is the District Court's decision not to hold a full evidentiary hearing, which we have addressed above. We find these attacks baseless, especially given the Laga Parties' failure to offer their own independent evidence to contradict the volumes of evidence submitted by the Settling Parties.